STATE OF NEBRASKA, APPELLEE, V.
DAPHNE HANSEN, APPELLANT.
___ N.W.2d ___

Filed November 14, 2014.    No. S-13-653.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
2. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.
3. ____: ____: ____. The relevant question for an appellate court reviewing a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
4. **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statue, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
5. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court gives statutory language its plain and ordinary meaning, and the court will not look beyond the statute to determine legislative intent when the words are plain, direct, and unambiguous.
6. **Criminal Law: Words and Phrases.** The word "profit" in Neb. Rev. Stat. § 28-205(1) (Reissue 2008) means to make "returns, proceeds, or revenue" on a transaction.
7. **Criminal Law: Convictions.** A defendant's conviction for aiding the consummation of a felony is not incompatible with a conviction as a principal of the underlying felony.
8. **Criminal Law: Aiding and Abetting: Time.** The crime of aiding the consummation of a felony is concerned with conduct that occurs after a felony is committed.

Petition for further review from the Court of Appeals, IRWIN, RIEDMANN, and BISHOP, Judges, on appeal thereto from the District Court for Antelope County, JAMES G. KUBE, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Matthew M. Munderloh, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, James D. Smith, and, on brief, J. Kirk Brown for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

Connolly, J.

## SUMMARY

Daphne Hansen conspired with her employee, Jerry Torres, to burn down a house that was owned and insured by Hansen's friend. In exchange for setting the fire, Torres testified that Hansen bought him various household goods. After a bench trial, the district court found Hansen guilty of arson in the second degree, conspiracy to commit arson, and aiding the consummation of a felony. Under Neb. Rev. Stat. § 28-205 (Reissue 2008), aiding the consummation of a felony is committed by one who intentionally aids another in securing the proceeds of or profiting from a felony. The Nebraska Court of Appeals reversed Hansen's conviction for aiding the consummation of a felony,[1] concluding that the State failed to prove the offense beyond a reasonable doubt. We granted the State's petition for further review. Because the Court of Appeals misinterpreted § 28-205, we conclude that the State proved beyond a reasonable doubt that Hansen is guilty of aiding the consummation of a felony.

## BACKGROUND

### Factual History

Hansen's convictions arose from a June 2010 fire that destroyed a house in Neligh, Nebraska. A limited liability company owned the house. Cynthia Johnston, Hansen's friend, was a member of the company. Hansen was not a member of the company, but considered herself associated with the enterprise. The house was bought with the intent to repair and "flip" it, but renovations proved costly and the house became a "money pit."

Hansen owned a cafe in Neligh and employed Torres as a part-time dishwasher. Hansen expressed her frustration about the house to Torres and joked about destroying the residence. Torres testified that the levity eventually dissipated and that he agreed to burn the house down for $1,000. Torres' wife testified that Hansen drove her to a gas station and that Torres'

---

[1] *State v. Hansen*, No. A-13-653, 2014 WL 1199321 (Neb. App. Mar. 25, 2014) (selected for posting to court Web site).

wife filled a 5-gallon gas can with diesel fuel. Torres' wife left the container of fuel at the house, and Torres testified that he returned to the house late in the evening, starting a fire that severely damaged the house.

Johnston carried insurance on the house. After paying off a debt to Hansen's boyfriend, Hansen and Johnston split the remainder of the insurance proceeds. Hansen did not pay Torres $1,000. Instead, Hansen took Torres and his wife to Norfolk, Nebraska, and bought them a television, television stand, refrigerator, baby crib, trash bags, a pack of toilet paper, and "some Zyrtec." Torres testified that the shopping trip was his compensation for starting the fire. Hansen testified that it was an advance on Torres' wages. The record does not show whether the shopping trip occurred before or after Hansen received her share of the insurance proceeds.

Torres eventually confessed to his role in the fire, and the State charged Hansen with second degree arson, conspiracy to commit arson, theft by deception, aiding the consummation of a felony, and false reporting. The State did not charge Johnston with a crime. After a bench trial, the district court found Hansen guilty of arson, conspiracy, and aiding the consummation of a felony. The court sentenced Hansen to 24 to 30 months' imprisonment for second degree arson and 24 to 30 months' imprisonment for conspiracy to commit arson, the sentences to run concurrently. The court sentenced Hansen to 6 to 12 months' imprisonment for aiding the consummation of a felony, the sentence to run consecutively to the sentences for arson and conspiracy.

## APPEAL

Before the Court of Appeals, Hansen argued that the evidence was insufficient to support her conviction for aiding the consummation of a felony. Under § 28-205(1), "[a] person is guilty of aiding consummation of felony if he intentionally aids another to secrete, disguise, or convert the proceeds of a felony or otherwise profit from a felony." The Court of Appeals framed the issue as whether the evidence was sufficient to find that Hansen "intentionally aided another person

to 'secrete, disguise, or convert' the house insurance proceeds . . . or that she intentionally aided another person to 'otherwise profit' from the house insurance proceeds."[2]

The court concluded that the record lacked sufficient evidence to show that Hansen intentionally aided another in profiting from the arson. The court interpreted § 28-205 to mean that the person whom Hansen aided must have been "involved . . . in committing the underlying felony."[3] The court concluded that there was no evidence that the persons who received part of the insurance proceeds, other than Hansen, had any part in the arson. The court did not discuss whether Hansen intentionally aided Torres in profiting from the arson by paying him off with household goods.

## ASSIGNMENT OF ERROR

The State assigns, restated, that the Court of Appeals erred by concluding that the evidence was insufficient to support Hansen's conviction for aiding the consummation of a felony.

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[4]

[2,3] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[5] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

---

[2] *Id.* at *5.

[3] *Id.*

[4] *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

[5] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[6] *Id.*

ANALYSIS

The State argues that the Court of Appeals' concept of profiting from a felony is too narrow. Specifically, the State contends that the court erroneously focused on the insurance proceeds to the exclusion of the household goods Hansen bought for Torres. Torres profited by receiving the household goods, according to the State, and Hansen intentionally aided him in doing so. Hansen responds that because she was convicted as a principal of a felony, she could not also be convicted for aiding another in profiting from the same felony.

[4,5] In interpreting § 28-205, we set forth some familiar principles. A court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[7] We give statutory language its plain and ordinary meaning,[8] and we will not look beyond the statute to determine legislative intent when the words are plain, direct, and unambiguous.[9]

[6] We conclude that the terms "proceeds of" and "profits from" the arson are not limited to the insurance claim under the plain meaning of § 28-205(1). As noted above, a person aids the consummation of a felony under § 28-205(1) if she "intentionally aids another to secrete, disguise, or convert the proceeds of a felony or otherwise profit from a felony." The State does not argue that Hansen aided another to "secrete, disguise, or convert the proceeds of a felony." Instead, the State focuses on the second clause in § 28-205(1) and argues that Hansen intentionally aided Torres to "otherwise profit from a felony." In this context, the word "profit" is used as a verb and means to make "returns, proceeds, or revenue" on a transaction.[10] We see no requirement that the proceeds in question be

[7] *State v. Robbins*, 253 Neb. 146, 570 N.W.2d 185 (1997).

[8] See *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

[9] See *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004).

[10] Webster's Encyclopedic Unabridged Dictionary of the English Language 1149 (1989).

"profit from a felony" as to both the one who aids and the one who is aided. It is enough, as to the person who is aided (i.e., Torres), that he receives the returns or proceeds as a result of the commission of a felony and that the person who aids (i.e., Hansen) has intentionally assisted the person aided in enjoying these returns or proceeds.

[7,8] Nor do we agree with Hansen that her conviction for aiding the consummation of a felony is incompatible with her conviction as a principal of the underlying arson. Hansen argues that "[t]he State's interpretation of consummation of felony makes that crime one [and] the same as aiding and abetting a felony," rendering § 28-205 "superfluous and meaningless."[11] The conduct by which Hansen aided and abetted the arson, however, must have occurred before or during the commission of the arson.[12] In contrast, aiding the consummation of a felony is concerned with conduct that occurs after a felony is committed.[13] Section 28-205 is a distinct crime requiring proof of conduct different from the proof necessary to show that Hansen aided and abetted Torres to commit the arson. Hansen's convictions as both a principal to the arson and one who aided the consummation of the arson does not render § 28-205 superfluous.

We conclude that the evidence is sufficient to find beyond a reasonable doubt that Hansen intentionally aided Torres in profiting from a felony. Torres testified that Hansen bought household goods for him as payoff for starting the fire. A rational trier of fact could have found that Torres, by receiving the household goods, profited from committing arson and that Hansen, by purchasing the household goods, intentionally aided him in profiting. So, the evidence is sufficient to support Hansen's conviction for aiding the consummation of a felony.

---

[11] Brief for appellant in response to petition for further review at 6.

[12] See 2 Wayne R. LaFave, Substantive Criminal Law § 13.2(a) (2d ed. 2003).

[13] See A.L.I., Model Penal Code and Commentaries § 242.4, comments 1-2 (1980).

## CONCLUSION

We conclude that the evidence was sufficient to support Hansen's conviction for aiding the consummation of a felony. By purchasing household goods for Torres as compensation for the arson, Hansen intentionally aided Torres in enjoying the returns or proceeds from his commission of the crime. Therefore, we reverse the judgment of the Court of Appeals and remand the cause with directions to affirm the conviction.

REVERSED AND REMANDED WITH DIRECTIONS.

---

PAMELA A. MANON ET AL., AS SUCCESSORS IN
INTEREST TO JUDY A. WHITE, DECEASED, AND
WILLIAM E. WAECHTER, APPELLANTS, V.
PEGGY J. ORR ET AL., APPELLEES.

___ N.W.2d ___

Filed November 14, 2014.    No. S-13-1010.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
4. **Actions: Parties.** Neb. Rev. Stat. § 25-301 (Reissue 2008) provides that every action shall be prosecuted in the name of the real party in interest.
5. ____: ____. The purpose of Neb. Rev. Stat. § 25-301 (Reissue 2008) is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.
6. **Actions: Parties: Public Policy.** Neb. Rev. Stat. § 25-301 (Reissue 2008) discourages harassing litigation and keeps litigation within certain bounds in the interest of sound public policy.
7. **Actions: Parties: Standing.** The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.
8. ____: ____: ____. The purpose of the real party in interest inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.