IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WISELY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ASHLEY N. WISELY, APPELLANT.

Filed October 15, 2024.    No. A-24-364.

Appeal from the District Court for Lancaster County: MATTHEW O. MELLOR, Judge. Affirmed.

F. Matthew Aerni, of Aerni Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, MOORE, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Ashley N. Wisely pled "no contest" to charges of terroristic threats and first offense resisting arrest in the Lancaster County District Court. Wisely now appeals, arguing that the district court abused its discretion by imposing excessive sentences and that her trial counsel was ineffective by failing to interview witnesses. We dismiss her claim of ineffective assistance of counsel and affirm the sentences of the district court.

## BACKGROUND

On January 8, 2024, an information was filed charging Wisely with terroristic threats, possession of a deadly weapon by a prohibited person, and possession of a deadly weapon in the commission of a felony. The information was subsequently amended twice to include various

- 1 -

additional charges, and ultimately the State charged Wisely with the three charges above as well as tampering with a witness or informant and first offense resisting arrest.

The court held a plea hearing on March 27, 2024, at which Wisely pled no contest to the charges of terroristic threats and first offense resisting arrest as part of a global plea agreement involving this case and multiple county court cases. The following account of events was relayed by the State as the bases for Wisely's charges.

On January 5, 2024, officers responded to a report of an altercation between two individuals later identified to be Wisely and her then boyfriend, Charles Stewart. According to police reports, responding officers made contact with a witness who described that Wisely and Stewart were arguing when Wisely grabbed Stewart and proceed to lift a long, metallic object resembling a knife. The witness further described that Wisely stabbed at Stewart, hitting his collar bone, and that immediately afterward, Stewart got on his bike and attempted to leave the scene. Wisely then proceeded to throw the knife at Stewart as he was departing.

Officers later made contact with Stewart, who informed officers that he and Wisely had been in a dating relationship for approximately 3 months. As claimed by the police reports, when asked about the witness' description of events, Stewart explained that he and Wisely had missed the bus, causing Wisely to get upset and grab him, tearing his shirt. As he tried to leave, she tore his coat pocket as well. The coat pocket was holding a butcher knife, which fell on the ground. Stewart told officers that Wisely picked up the knife, raised it upward, and informed him that she could stab him. He also confirmed that she later threw the knife at him when he turned to leave.

Stewart informed officers that he later picked up the knife and threw it in a trashcan near where the officers had responded to the initial call. Officers later corroborated this statement by finding the knife in the same trashcan.

When officers went to arrest Wisely, they reported that she became confrontational and aggressive. She refused verbal commands, had to be physically removed from the police cruiser, and she resisted arrest by refusing to place her hands behind her back. She was so defiant that officers had to place her in a restraint chair and, because she was continuously spitting on the officers, they placed a sock over her head.

After hearing the factual basis, the district court informed Wisely of her rights and found that her plea was knowing and voluntary. The court then accepted the plea and adjudged Wisely guilty of both charges. The State dismissed the remaining charges.

On February 15, 2024, Wisely was sentenced to 24 months' imprisonment and 12 months' post-release supervision on the terroristic threats conviction, and 6 months' imprisonment on the conviction for first offense resisting arrest. The sentences were ordered to be served concurrently and she received 42 days' credit for time served. Wisely now appeals.

## ASSIGNMENTS OF ERROR

Wisely assigns that (1) the district court abused its discretion when sentencing her and (2) trial counsel was ineffective for not contacting witnesses of which Wisely informed her.

## STANDARD OF REVIEW

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering

and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Lara*, 315 Neb. 856, 2 N.W.3d 1 (2024).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Filholm, supra.*

ANALYSIS

*Sentences Imposed Not Excessive.*

Wisely argues on appeal that the sentences imposed by the district court were an abuse of discretion. We disagree.

An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. McTizic*, 31 Neb. App. 675, 988 N.W.2d 197 (2023). A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

Statutory provisions provide factors to be considered by the court in rendering sentences, including the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. See *State v. Lara, supra*.

The Nebraska Supreme Court has construed this statutory language to mean that an appellate court "may" reduce the sentence rendered by the district court "when in its opinion the sentence is excessive." *State v. Morton*, 310 Neb. 355, 365, 966 N.W.2d 57, 66 (2021). See Neb. Rev. Stat. § 29-2308(1) (Reissue 2016). However, when a sentence is imposed within the statutory limits, "the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed." *State v. Morton*, 310 Neb. at 365-66, 966 N.W.2d at 66.

In the present case, Wisely was convicted of terroristic threats, a Class IIIA felony, and first offense resisting arrest, a Class I misdemeanor. Neb. Rev. Stat. §§ 28-311.01 and 28-904 (Reissue 2016). She was sentenced to 24 months' incarceration and 12 months' post-release supervision for terroristic threats, and 6 months' incarceration for first offense resisting arrest. The sentences were ordered to run concurrently and Wisely was given 42 days' credit for time served. Class IIIA felonies are punishable by a maximum of 3 years' imprisonment and 18 months' post-release supervision. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Class I misdemeanors are punishable by a maximum of 1 year imprisonment. Neb. Rev. Stat. § 28-106 (Reissue 2016).

Notwithstanding the fact her sentences are within the statutory limits, Wisely argues on appeal that the sentencing court abused its discretion by imposing an excessive sentence. She contends that she would have received a less severe sentence had the district court properly considered the statutory factors relating to her mentality and social and cultural background.

Wisely points to statements made during allocution that the district court allegedly disregarded, particularly her notifying the court that she had been sexually assaulted as an explanation for her mentality at the time of the offense.

At sentencing, the court expressly assured Wisely that it was "not disregarding by any means the past experience that [she] had that led [her] to this." Further, the court informed Wisely that it had read and reviewed the presentence investigation report (PSR) and had considered the comments of Wisely and her counsel, as well as all the relevant statutory factors.

The PSR contained a Level of Service Case Management Inventory assessment which determines the degree of risk an individual presents to recidivate. Wisely was determined to be at a "very high" risk to reoffend. Further, she scored "high" or "very high" risk in all but two subcategories.

When imposing the sentences, the court relayed that, in light of the circumstances of the crime and Wisely's history, character, and condition, it had found Wisely's imprisonment was necessary for the protection of the public because of the substantial risk that during any period of probation Wisely would engage in further criminal conduct and that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. The court relied upon Wisely's extensive criminal history of offenses similar in nature to those at issue and noted that the PSR indicated Wisely had not taken accountability and had even attempted to convince the victim of the present offense to "change his story." Moreover, the sentencing court informed Wisely it had considered all the statutory factors, and expressly assured her it had accounted for her past experiences and her statements during allocution.

Even when taking the statements and past experiences into account, the PSR contained substantial justification for the court's sentences under the statutory factors. We find the sentencing court properly considered the appropriate factors and the sentences imposed were not an abuse of discretion.

*Ineffective Assistance of Counsel Insufficiently Pled.*

Wisely assigns that her trial counsel was ineffective by failing to interview witnesses that she disclosed to counsel and argues that they would have provided exonerating information for a jury to find she was not guilty of the charges against her. We find this claim is insufficiently pled.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* An appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance. *State v. Filholm, supra.*

An appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *Id.* The determining factor of whether an ineffective assistance of counsel claim can be

resolved on direct appeal is whether the record is sufficient to adequately review the question. See *id*. In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). An appellate court will not scour the remainder of the brief in search of such particularity. See *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id*. Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

In the matter before us, Wisely assigns that "trial counsel was ineffective for not contacting witnesses of which [she] informed trial counsel." Brief for appellant at 5. She argues that such "witnesses had information which [Wisely] believes would have caused a jury to find [her] not-guilty of the charges." *Id*.

Wisely further states that her claims "are sufficiently particularized that an appellate court will know what it is looking for in the record." *Id*. We disagree. The brief does not identify the names or descriptions of any uncalled witnesses. See *State v. Blake, supra.*

Wisely's brief assigns ineffective assistance of counsel as error but is simultaneously devoid of any information regarding the names or descriptions of the uncalled witnesses. We therefore decline to consider this assignment of error.

CONCLUSION

For the forgoing reasons, we affirm the sentence of the district court.

AFFIRMED.