IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WEATHERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON J. WEATHERS, APPELLANT.

Filed January 3, 2017.    No. A-16-305.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Joseph Kuehl for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

Brandon J. Weathers appeals from his convictions in the Douglas County District Court of two counts of first degree sexual assault of a child. Because we find no merit to the arguments raised on appeal, we affirm.

BACKGROUND

Weathers was charged with two counts of first degree sexual assault of a child. The evidence presented at trial established that the 13-year-old victim, H.A., was a foster child placed in Weathers' home in April 2014. Although H.A. was removed from Weathers' care in June 2014, she became pregnant in October, and DNA testing proved that Weathers was the father of the child, which H.A. ultimately miscarried. Weathers' defense at trial was that he never had sexual

intercourse with H.A.; rather, the pregnancy occurred as a result of H.A. using a syringe containing Weathers' semen. Following his conviction, Weathers filed this appeal. Because the errors Weathers raises do not involve the circumstances underlying the charge, we limit our recitation of the facts to those pertinent to our analysis.

The State initially filed an information charging Weathers on November 26, 2014. The State amended the information narrowing the charges to two counts of first degree sexual assault of a child. Shortly before trial was scheduled to begin, Weathers filed multiple unsuccessful motions to continue trial. Also prior to trial, Weathers filed a motion to produce for examination, requesting that the State produce to him a cell phone seized and examined in connection with the case. The district court denied the motion.

Jury trial began on December 7, 2015. Although the district court strongly advised against it, Weathers was permitted to represent himself at trial, and his previously appointed counsels were appointed as his legal advisors. During a break on the third day of trial, Weathers was standing outside the courtroom in handcuffs when several jurors walked out of the jury room. He moved for a mistrial, arguing that the jurors may have seen him in handcuffs. The district court denied the motion.

The jury ultimately found Weathers guilty of both counts. He was sentenced to two consecutive terms of 50 to 80 years' imprisonment. He now appeals to this court.

ASSIGNMENTS OF ERROR

Weathers assigns that the district court erred in (1) denying his motions to continue trial, (2) denying his motion for mistrial, (3) denying his motion to produce for examination, (4) not allowing him to refresh the recollection of a witness, and (5) imposing an excessive sentence. He also asserts that we should review the evidentiary issues in the case for plain error, that he received ineffective assistance of counsel in various respects, and that the culmination of errors at trial denied him his right to a fair trial.

ANALYSIS

*Motions to Continue*.

In November and December, 2015, Weathers filed numerous motions to continue trial, all of which were denied, and trial ultimately began on December 7. In his brief on appeal, he specifically argues that the district court erred in failing to grant two of his motions to continue.

First, Weathers requested a continuance on November 4, 2015, arguing that neither he nor his trial counsel had received copies of reports of the data extracted from the cell phones seized in connection with the case, including text message information. The State agreed to ensure that all of the reports from the cell phone analysis had been turned over to Weathers, and the district court denied the motion, finding that Weathers had a month remaining to prepare for trial.

In addition, Weathers moved to continue trial on December 3, 2015. At that hearing, he argued that he still believed text messages were missing from one of his cell phones and reported that his law library time had been suspended. The court denied the motion to continue.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Edwards*, 278 Neb. 55, 767 N.W.2d 784 (2009). An abuse of discretion occurs when a trial court's decision is

based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*. And there is no abuse of discretion by the court in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice as a result of that denial. *Id*.

Weathers' requests for continuances were premised on his belief that at least one, if not two, of the cell phones seized during the investigation contained text messages between him and H.A. that would exonerate him. He claimed that the State was either refusing to turn over reports containing those pertinent text messages or had deleted the text messages so they would not appear on reports turned over to Weathers. He argued that trial should have been continued so that the State could turn over all cell phone information to him and so that he would have had sufficient time to review those reports. However, there was no additional information to be provided to Weathers. The State continually insisted that it had turned over all cell phone information to Weathers, and at each hearing on Weathers' motions to continue, the State agreed to "double-check" to ensure it had provided all cell phone extraction reports to Weathers. No additional unreported information was found or disclosed to Weathers on the eve of trial. Therefore, Weathers has not established that he suffered any prejudice by the denial of his motions to continue. Accordingly, this assignment of error has no merit.

*Motion for Mistrial.*

On the third day of trial, Weathers moved for mistrial on the ground that several jurors may have seen him in handcuffs during a break in the trial. A sheriff's deputy testified that while Weathers was in the hallway handcuffed, a juror was sitting nearby on her cell phone, and upon noticing her, the deputy and another sheriff's deputy stood in front of the juror to block her view of Weathers. A minute or two later, five or six other jurors walked out into the area, but the deputies and Weathers' legal advisors were still standing near Weathers blocking the view of the handcuffs. The situation lasted one or two minutes. The deputy testified that there was no indication any of the jurors saw anything but acknowledged that it was possible they could have seen Weathers in handcuffs. The district court declined to grant a mistrial, finding that Weathers failed to establish that a juror actually saw him in handcuffs.

Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013). In alleging error in failure to grant a motion for mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006).

The general rule is that a defendant who is on trial should be free from shackles unless they are necessary to prevent violence or escape. *State v. Dixon, supra*. This is because it is central to the right to a fair trial, guaranteed by the 6th and 14th Amendments, that one accused of a crime is entitled to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. *State v. Dixon, supra*. But application of the general rule must be tempered with some measure of common sense. *Id*.

- 3 -

Jurors are aware that the defendant did not arrive there by choice or happenstance. *Id*. It is not possible to eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct. *Id*.

In *State v. Dixon*, the defendant moved unsuccessfully for mistrial after prospective jurors may have seen him in leg restraints during jury selection. In affirming the denial of his motion, the Supreme Court considered the incident in the context of the entire proceeding, including the fact that the record was unclear whether any prospective juror actually ever saw him in leg restraints.

Similarly, in the present case, it is unclear whether any juror actually saw Weathers in handcuffs. Once it became apparent that a juror was in the area, the deputies took immediate steps to conceal the handcuffs from both the view of the juror sitting in the area, who appeared focused on her cell phone during the incident, and the juror who subsequently walked out into the hallway. Those jurors walked past Weathers without hesitation on their way to the restroom or elsewhere during a break in trial, and the entire event lasted only one or two minutes. The jury was aware that Weathers had been charged with a serious crime, and evidence was presented over the course of a four-day trial. Based on the foregoing, we conclude that Weathers has failed to prove that the alleged error actually prejudiced him, rather than creating only the possibility of prejudice. We therefore find no abuse of discretion in the denial of Weathers' motion for mistrial.

*Motion to Produce for Examination.*

Prior to trial, Weathers filed a motion to produce for examination. He requested that the State provide to him a cell phone seized from him during the investigation of his case, because he believed there were text messages on that phone that did not appear on any report. The State agreed that it would ensure all of the cell phones had been analyzed and the reports turned over to Weathers; however, it objected to allowing Weathers access to the phone itself. The district court observed that generally a defendant is provided a report after evidence has been analyzed, not the evidence itself, and denied the motion.

Weathers cites to no authority which would allow the district court to authorize the release of a piece of physical evidence to the defendant directly, and we have found none. We note that Weathers was not requesting that the cell phone be released to an independent expert for examination; rather, he wanted the actual device delivered to him at the prison where he was incarcerated pending trial. We conclude the district court did not err in denying his request.

*Refresh Recollection.*

During his cross-examination of H.A. at trial, Weathers posed numerous questions to her regarding information she provided during a November 2014 forensic interview. H.A. repeatedly indicated she did not remember what she said during the interview. Weathers then requested permission to have H.A. watch a video recording of the interview in order to refresh her recollection. The court denied the request. Weathers challenges this decision on appeal.

We first note that the Rules of Evidence provide that the judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence, in part, to avoid needless consumption of time. See Neb. Rev. Stat. § 27-611(1) (Reissue 2008). Weathers' request came in the middle of a jury trial, and the district court observed that H.A. had already testified that she lied during her interview to protect him. In addition, although Weathers argues

that the court erred in denying his request to play the videotape to refresh H.A.'s recollection, he does not indicate how the denial was prejudicial. We find it was not.

Weathers' request came after H.A. repeatedly stated that she did not remember what she had said during the November 2014 forensic interview. None of the questions Weathers posed were directed at his defense theory that H.A.'s pregnancy was the result of using a syringe and not the result of a sexual relationship. Rather, the questions were designed to attack H.A.'s credibility and establish inconsistencies in responses she gave during the interview and her responses at trial. However, at one point during cross-examination, H.A. replied, "I don't remember what I said to [the interviewer during the November 2014 interview], because it was probably all a lie. So I really don't remember." At another point, H.A. responded to Weathers' question about the November interview by saying, "I actually lied just to protect you." Thus, H.A. herself admitted that she lied during the interview, and any additional evidence attacking her credibility, particularly with respect to the November interview, would have been cumulative.

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014). We cannot find that the district court abused its discretion in refusing to allow H.A. to watch the videotape of her forensic interview as an attempt to refresh her recollection during trial.

*Plain Error in Evidentiary Issues.*

Weathers argues that there were numerous instances where testimony was heard by the jury when a timely objection would have prevented the jury from hearing that evidence. He cites numerous instances where, for example, a witness was allowed to provide hearsay statements without objection. He urges us to review those instances under the plain error doctrine and find that, when taken as a whole, they prejudiced him and denied him a fair trial.

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

We decline to review for plain error the evidentiary issues Weathers identifies in his brief. He acknowledges that a timely objection would likely have successfully prevented such evidence from reaching the jury; however, Weathers elected to represent himself at trial, against the advice of the district court.

A criminal defendant who proceeds pro se is held to the same trial standard as if he or she were represented by counsel, and it is not up to the trial court to conduct the defense of a pro se defendant. *State v. Gunther*, 271 Neb. 874, 716 N.W.2d 691 (2006). It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. *Id*. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Id*. at 889, 716 N.W.2d at 704. A defendant who elects to proceed pro se cannot thereafter complain of the quality of his or her own defense. *State v. Pullens*, 281 Neb. 828, 800

N.W.2d 202 (2011). Because Weathers elected to proceed pro se at trial, he cannot now complain about evidentiary errors which could have been prevented by a timely objection at trial.

*Excessive Sentence.*

Weathers argues that the district court abused its discretion in imposing an excessive sentence. We disagree.

Weathers was convicted of first degree sexual assault of a child, which is a Class IB felony with a maximum prison sentence of life and a mandatory minimum of 15 years. Neb. Rev. Stat. §§ 28-319.01 (Reissue 2008) and 28-105 (Supp. 2015). Thus, Weathers' consecutive sentences of 50 to 80 years' imprisonment fall within the statutory limits. Nevertheless, he argues that his sentences are excessive because the district court failed to consider all relevant factors instead focusing on him not accepting responsibility for his actions.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

At sentencing, the district court indicated that it considered the required factors and information contained in the presentence investigation report. In fashioning Weathers' sentences, the court acknowledged Weathers' failure to take responsibility for his actions. But more importantly, the court relied on the nature of the offenses and Weathers' actions after the investigation began. H.A. was Weathers' 13-year-old foster daughter, and the sexual assaults began during the 7-week period she resided in his home. After she was moved from Weathers' home, he continued to sneak cell phones to her, followed her around, and maintained a sexual relationship with her, impregnating her more than 4 months after she was removed from his care. The district court observed that Weathers was the only father figure H.A. ever had, which made his violation of her trust that much worse. And H.A.'s caseworkers were extremely fearful for H.A.'s safety and exhausted almost all of their options trying to keep her away from Weathers. Based on the foregoing, we cannot say that the sentences constitute an abuse of discretion.

*Ineffective Assistance of Counsel.*

Weathers claims that during the time he was represented by counsel, he received ineffective assistance.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id*.

To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Weathers first claims that trial counsel was ineffective for failing to file a pretrial motion challenging the DNA evidence which established that he was the father of H.A.'s baby. We conclude that Weathers failed to demonstrate that he was prejudiced by such inaction, because he admitted to fathering the child. Weathers' testified on his own behalf at trial and stated, "I helped this girl get pregnant." His explanation was that he masturbated into a baggie, placed the contents of the baggie into a syringe, and gave the syringe to H.A. who then impregnated herself. Therefore, he cannot demonstrate a reasonable probability that he would not have been convicted if the DNA evidence would have been excluded as evidence at trial.

Weathers next claims that trial counsel was ineffective for failing to file a pretrial motion challenging search warrants which were used to collect his DNA and search various cell phones found in his possession. He asserts that "damaging evidence" was obtained as a result of the search warrants, but he does not elaborate. Based on the broad nature of Weathers' allegation, the nature of the "damaging evidence" is unclear, and we are unable to discern whether the evidence was cumulative, as explained above. He does not identify any specific evidence which should have been suppressed, nor does he specify any legal basis for filing such a motion. Therefore, Weathers has not alleged deficient performance with sufficient particularity, and this claim is not properly raised in this appeal. See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

In his next ineffective assistance of counsel claim, Weathers argues, liberally construed, that trial counsel was ineffective in failing to obtain an expert witness to examine a cell phone for missing text messages. We find the record is insufficient to address this claim on direct appeal. Weathers repeatedly insisted that the cell phone reports he received from the State were missing information on text messages he exchanged with H.A. We are unable to discern from our record trial counsel's reasoning for not requesting the appointment of an independent expert to examine the cell phones and determine whether any additional text messages were present.

Finally, Weathers asserts that trial counsel was ineffective in failing to secure the presence of two witnesses to testify at trial. He names the witnesses he asked his legal advisors to subpoena, but the record does not indicate whether Weathers informed trial counsel that he wanted these witnesses to be called to testify at trial prior to the time Weathers elected to represent himself. We therefore find that the record before us is insufficient to address this claim.

*Cumulative Errors.*

Weathers argues that the cumulative nature of the errors that occurred at trial violated his constitutional right to a fair trial. We find no merit to this argument.

The Nebraska Supreme Court has recognized the doctrine of cumulative error in the context of a criminal jury trial, explaining that although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his constitutional right to a public trial by an impartial jury. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). Having found no merit to any of Weathers' assigned errors, we conclude that Weathers was not denied the right to a public trial by an impartial jury.

## CONCLUSION

We find no merit to any of the errors assigned on appeal. We therefore affirm the convictions and sentences.

AFFIRMED.